**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 10-cv-03011-REB

BRIAN L. MEDINA,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**ORDER REVERSING DISABILITY
DECISION AND REMANDING TO COMMISSIONER**

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1][1] filed December 13, 2010, seeking review of the Commissioner's decision denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse the disability decision, conclude that plaintiff has proved disability, and remand for further determination whether plaintiff meets the non-disability requirements of Title XVI.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff alleges that he is disabled as a result of bipolar disorder, affective

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

disorder, and borderline intellectual functioning.  After his application for supplemental security income benefits was denied, plaintiff requested a hearing before an administrative law judge.  An August 11, 2005, hearing resulted in an unfavorable decision, but the Appeals Council vacated and remanded for further development of the record.  A second hearing thus was conducted on August 21, 2007.  The ALJ again denied plaintiff's claim for benefits, and the Appeals Council affirmed that determination.  On appeal to this court, the Honorable Phillip A. Brimmer, United States District Judge for the District of Colorado, reversed the ALJ's determination and remanded for further proceedings.  Accordingly, a third hearing was conducted on October 28, 2009.  At the time of this most recent hearing, plaintiff was 26 years old.  He has a marginal education and no past relevant work experience.  He has not engaged in substantial gainful activity since at least September 1, 2003, the date of his application for benefits.

The ALJ found that plaintiff was not disabled and therefore not entitled to supplemental security income benefits.  Although the medical evidence established that plaintiff suffered from severe mental impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ found that plaintiff had the residual functional capacity to perform a medium work that did not involve complex tasks or instructions and involved no contact with the general public.  Although plaintiff had no past relevant work, the ALJ concluded that there were jobs existing in significant numbers in the national and local economies that were within plaintiff's residual functional capacity.  He, therefore, found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

    1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

    2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

    3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

    4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant

>> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 416.920(b)-(f). *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed

to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner.  ***Id.***

### III.  LEGAL ANALYSIS

The decision on review in this appeal arises out of the remand order issued by Judge Brimmer, directing the ALJ to articulate legitimate and sufficient reasons for the weight assigned to the various medical opinions of record.  Instead, the ALJ has done little more than repackage his rejected ratiocination, albeit now making copious use of italics and other forms of emphasis in an apparent attempt to indicate the stridency of his continued adherence to the very reasons Judge Brimmer found insufficient to justify the previous disability determination.  These reasons are no more probative or persuasive now than they were more than two and one-half years ago, and their reiteration following remand evidences either ignorance of or total disregard for the mandate rule and the law of the case doctrine.

Judge Brimmer remanded after concluding, *inter alia*, that the ALJ failed to give adequate, legitimate reasons for rejecting the opinions of both plaintiff's treating source, Dr. Richard Rivera (and his physician's assistant, Stephen Quackenbush) and the consultative examiner, Dr. Richard Madsen.  "The law of the case doctrine prevents the relitigation of the settled issues in a case, thus, protecting the settled expectations of the parties, ensuring uniformity of decision, and promoting judicial efficiency."  ***Ozbun v. Callahan***, 968 F.Supp. 478, 480 (S.D. Iowa 1997) (citation and internal quotation marks

omitted). *See also* 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, and EDWARD H. COOPER, *Federal Practice & Procedure, Jurisdiction 2nd* § 4478.3 at 759 ("[A]n issue ... decided on appeal ... become[s] part of the mandate binding on remand."). "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886, 109 S.Ct. 2248, 2254, 104 L.Ed.2d 941 (1989). This rule pertains whether the district court decided an issue directly or by necessary implication. *Poppa v. Astrue*, 569 F.3d 1167, 1170 (10th Cir. 2009). The mandate rule is a corollary of the law-of-the-case doctrine and requires a district court to "comply strictly with the mandate rendered by the reviewing court." *Huffman v. Saul Holdings Ltd. Partnership*, 262 F.3d 1128, 1132 (10th Cir. 2001).

In the second hearing decision, which Judge Brimmer reviewed, the ALJ concluded that Dr. Rivera and Mr. Quackenbush's opinions regarding the disabling effect of plaintiff's mental impairments contradicted the marginal medical evidence of record. More particularly, the ALJ relied on the disconnect between the relatively minor reported effects of the multiple head traumas plaintiff suffered and the attribution – by both plaintiff and his treating doctors – of his impairments to those incidents. While Judge Brimmer agreed that such findings were sufficient to discredit the notion that there was a physical genesis for plaintiff's impairments, he concluded that the ALJ could not completely disregard the opinion of a treating source on that basis alone. He noted that the ALJ failed to consider any of the factors set forth in 20 C.F.R. § 416.927(d) for

6

properly weighing the opinion of a treating source,[2] and thus was not entitled to simply disregard these opinions without further analysis.[3]  (Tr. 319-320.)

Despite this directive, on remand, the ALJ devoted the majority of his consideration of Dr. Rivera and Mr. Quackenbush's opinions to an emphatic dissertation on the lack of evidence showing a cause-and-effect relationship between plaintiff's past physical traumas and his alleged present mental impairments.  (Tr. 300-302.)  Indeed, a large portion of the ALJ's discussion of this evidence is borrowed wholesale from his prior opinion.  (**Compare** Tr. 18-20 **with** Tr. 300-302.)  In concluding anew that Dr. Rivera and Mr. Quackenbush's opinions were entitled to no weight, the ALJ simply reiterated verbatim the precise conclusion that Judge Brimmer found unsupportable, that is, that the records contradicted the opinions because there was no basis for concluding that plaintiff's impairments were related to his prior injuries.  (**Compare** Tr.

---

[2] These factors include:

1. the physician's length of treatment of the claimant;
2. the physician's frequency of examination;
3. the nature and extent of the treatment relationship;
4. the support of the physician's opinion afforded by the medical evidence of record;
5. the consistency of the opinion with the record as a whole; and
6. the specialization of the treating physician.

20 C.F.R. § 404.927(d)(2).

[3] The opinion of a treating source is generally entitled to controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating source opinion is not given controlling weight, it is still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927." **Social Security Ruling 96-2p**, 1996 WL 374188 at *4 (SSA July 2, 1996). *See also Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). In either event, a treating source opinion may not be rejected absent good cause for specific, legitimate reasons clearly articulated in the hearing decision. *Watkins*, 350 F.3d at 1301; ***Goatcher v. United States Department of Health & Human Services***, 52 F.3d 288, 290 (10th Cir. 1995); *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

20 *with* Tr. 302.) Thus, the ALJ violated the mandate rule.[4]

Granted, it is difficult to fault the ALJ's ultimate conclusion that Dr. Rivera's and Mr. Quackenbush's opinions appear to be based on a dearth of actual medical evidence. Indeed, it appears accurate to say that plaintiff saw these treating sources no more than once a year mainly to request updated "Med-9" forms,[5] and that their opinions on his mental impairments were based largely on his self-reports. As neither Dr. Rivera nor Mr. Quackenbush was a specialist in mental health disorders, their ability to accurately assess the legitimacy of plaintiff's subjective reports on those matters might be thought questionable.[6] All these considerations might well justify a conclusion that the ALJ's disregard of the mandate rule with respect to the opinions of Dr. Rivera and Mr. Quackenbush was ultimately harmless. *See Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988)*.*

However, the same cannot be said of the ALJ's flouting of the mandate rule with respect to the opinions of Dr. Madsen. Dr. Madsen diagnosed plaintiff with bipolar disorder and borderline intellectual functioning and concluded that plaintiff's "ability to do

---

[4] Nor does this case present any of the "exceptionally narrow" circumstances in which deviation from the law of the case is permissible. *See Huffman v. Saul Holdings Limited Partnership*, 262 F.3d 1128, 1133 (10th Cir. 2001) (court may depart from the law of the case only "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice") (citation and internal quotation marks omitted).

[5] The Med-9 form is part of the application for benefits under the Colorado State Aid to the Needy Disabled (AND) program. The Tenth Circuit has refused to find categorically that Med-9 forms are entitled to no weight, especially where they have been completed by a treating source. *See Andersen v. Astrue*, 2009 WL 886237 at * 6-7 (10th Cir. Apr. 3, 2009); *Angster v. Astrue*, 703 F.Supp.2d 1219, 1228 n.2 (D. Colo. 2010).

[6] Of course, a physician's reliance on a plaintiff's subjective reports is not in itself sufficient ground to discredit her opinion, *see Nieto v. Heckler*, 750 F.2d 59, 60-61 (10th Cir. 1984), and nothing in the record suggests that plaintiff's treating sources considered him to be malingering.

8

work-related activities would be impaired" insofar as "[h]e would have difficulty maintaining a regular work schedule, and focusing and concentrating at work" and "[h]is learning disability and level of cognitive functioning would also interfere and limit the types of work that he can do." (Tr. 133.) Dr. Madsen subsequently completed a mental residual functional capacity evaluation form indicating the plaintiff would have marked limitations in his ability to understand, remember, and carry out detailed instructions, to perform activities within a regular schedule, to sustain an ordinary routine, and to maintain attention and concentration. (Tr. 239-240.)

In his original decision, the ALJ rejected these opinions as based largely on "less than factual statements made by the claimant." He also concluded that Dr. Madsen's Global Assessment of Functioning ("GAF") score of 50[7] did not square with his findings on examination. (Tr. 20.) Judge Brimmer found both these positions untenable, noting that the ALJ's apparent insistence on some sort of objective or standardized measure to diagnose a mental impairment was contrary to law (Tr. 322 (citing **Robinson v. Barnhart**, 366 F.3d 1078, 1083 (10th Cir. 2004)), and concluding that the ALJ could not substitute his own lay assessment of the seriousness of plaintiff's symptoms for Dr. Madsen's clinical medical judgment as reflected in the GAF score (Tr. 322-324).

Yet on remand, the ALJ cited precisely these same two reasons as again justifying wholesale rejection of Dr. Madsen's opinion. (Tr. 303.) These reasons are no

---

[7] "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" **Langley v. Barnhart**, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004) (quoting American Psychiatric Association, **Diagnostic and Statistical Manual of Mental Disorders** at 32 (Text Revision 4th ed. 2000) ("**DSM-IV**")). A GAF of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." **Lee v. Barnhart**, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004) (quoting **DSM-IV** at 34).

more compelling now than they were in 2009, and provide no more justification for the ALJ's decision to afford no weight to Dr. Madsen's opinions.

Thus, the ALJ failed to adhere to the requirements of the mandate rule, and his decision to reject Dr. Madsen's opinion is insupportable. Moreover, following remand, the ALJ rejected the opinion of a second consultative examiner, Dr. Jose Vega, for the same reasons he rejected Dr. Madsen's opinions. (Tr. 303-304, 393-394.)[8] Again, these reasons do not justify the ALJ's conclusion that Dr. Vega's assessment was entitled to "little weight," which, in fact, was no weight at all. (Tr. 304.)

By rejecting these medical opinions, the ALJ was left with no medical evidence of record to support his determination of plaintiff's mental residual functional capacity, save the assessment of the non-examining state agency physician, Dr. James Wanstrath. (Tr. 136-138.) Noting that this opinion was "based on an incomplete record and offers only a superficial review" of the medical evidence then available in any event, Judge Brimmer concluded that the ALJ failed to articulate any "specific and compelling reason for placing it above the treating and examining sources." (Tr. 327.) The ALJ did not even mention Dr. Wanstrath's opinion in his order on remand, much less demonstrate any specific or compelling reason why this "most cursory and incomplete opinion in the record" should be given determinative weight. (Tr. 326.) Thus, even if the ALJ did implicitly adopt this opinion, as the Commissioner suggests (but which is not at all

---

[8] The ALJ also slighted Dr. Vega's opinion as having been based on a "very limited interview." (Tr. 304.) Given that the opinion of the state agency physician, on which the ALJ seems to have ultimately did relied in determining plaintiff's mental residual functional capacity, was based on no interview at all, this justification rings hollow. *See Sanchez v. Astrue*, 2009 WL 4810696 at *4 n.5 (D. Colo. Dec. 10, 2009) ("It . . . strikes this court as curious, at best, to have discredited [a consultative examiner's] opinion regarding plaintiff's residual functional capacity because it was based on a single visit while simultaneously adopting the opinion of a source who . . . had not examined plaintiff at all.").

10

apparent from the record), it would be insufficient to support the ALJ's residual functional capacity assessment in any event.

The ALJ's disability determination, therefore, is not supported by substantial evidence. Plaintiff asks that I exercise my discretion to direct the Commissioner to find him disabled for purposes of Title XVI and remand only for a determination as to whether he meets the non-disability requirements thereunder. I find the circumstances of this case present an appropriate opportunity for the exercise of my discretion in that regard. **See Nielson v. Sullivan**, 992 F.2d 1118, 1122 (10th Cir. 1993).

To say that this case has had a protracted procedural history would be a vast understatement. The hearing decision now under review represents no less than the third attempt by an ALJ to properly determine plaintiff's eligibility for benefits. The most recent opinion appears to have been issued with blatant disregard for the remand order necessitating it. Plaintiff's application for supplemental security income benefits has now been pending since 2003. **See Salazar v. Barnhart**, 468 F.3d 615, 626 (10th Cir. 2006) (length of time the matter has been pending relevant factor in determining whether to direct award of benefits). In all that time, and despite repeated attempts, the Commissioner has been unable to articulate any specific, legitimate reason for discrediting the opinions of plaintiff's treating and examining sources regarding the functional limitations imposed by plaintiff's severe mental impairments.

At the October, 2009, hearing, the vocational expert testified that there were no jobs available in the economy compatible with limitations of the degree Dr. Vega imposed. (Tr. 403-404.) In addition, Dr. Rivera stated that he concurred with Dr. Vega's

assessment of plaintiff's limitations.  (Tr. 250.)  Based on this evidence and in light of the other considerations outlined herein, a remand would serve only to further delay a finding of disability to which plaintiff clearly is entitled.  Nevertheless, because the Commissioner has not yet considered whether plaintiff meets the non-disability requirements of Title XVI, I remand with directions to consider those issues.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

2.  That **JUDGMENT SHALL ENTER** in favor of plaintiff and against the Commissioner, insofar as plaintiff has established that he meets the disability requirements of Title XVI, as provided by 20 C.F.R. § 416.335;

3.  That this case is **REMANDED** to the Commissioner for further consideration to determine whether plaintiff satisfies the non-disability requirements of Title XVI; and

4. That plaintiff is **AWARDED** his costs, to be taxed by the clerk of the court pursuant to **FED. R. CIV. P**. 54(d)(1) and **D.C.COLO.LCivR** 54.1, and as permitted by 28 U.S.C. § 2412(a)(1).

Dated March 21, 2012, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn
Robert E. Blackburn
United States District Judge